UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
JOSEPH S. HIRSCH,

                Plaintiff,            <u>MEMORANDUM & ORDER</u>
                                      08-CV-2660(JS)(AKT)

     -against-

JOHN K. DESMOND, SUFFOLK COUNTY
PROBATION DEPARTMENT, CHRISTINA J.
GILSON, NANCY H. YOUNG, KAREN
BELLAMY, KATHERINE PERNAT,
and JOHN (JANE) DOE,

                Defendants.
------------------------------------X

APPEARANCES:
For Plaintiff:     Joseph S. Hirsch, <u>pro se</u>
                    45 Belmont Avenue
                    Plainview, New York 11803

For Defendants:    Toni E. Logue, Esq.
                    Assistant Attorney General
                    200 Old Country Road, Suite 240
                    Mineola, New York  11501

SEYBERT, District Judge:

        Joseph S. Hirsch, <u>pro se</u>, commenced this action pursuant to 42 U.S.C. § 1983 on June 25, 2008, alleging violations of his federal constitutional rights.  On October 21, 2009, Hirsch filed an Amended Complaint.  In response to the Amended Complaint, Defendants John K. Desmond, Christina J. Gilson, and Nancy J. Young filed a joint answer.  Defendants Karen Bellamy and Katherine Pernat have moved to dismiss under FED. R. CIV. P. 12(b)(1) and (6).  And Stephen D. Weber appeared, identified himself as the Amended Complaint's "John Doe," and

filed his own motion under Rules 12(b)(1) and (6) (for purposes of the pending motions, Bellamy, Pernat and Weber are collectively "Moving Defendants"). For the reasons stated below, the pending motions to dismiss are DENIED to the extent they are brought under Rule 12(b)(1), but GRANTED to the extent they are brought under Rule 12(b)(6).

BACKGROUND

On January 3, 2002, Plaintiff Joseph S. Hirsch ("Hirsch") was convicted at a jury trial of sexual abuse, assault, and unlawful imprisonment, and sentenced to a six-year term of incarceration. At sentencing, Hirsch's counsel objected to several portions of the Pre-Sentence Investigation and Report (PSIR), prepared by the Suffolk County Probation Department. Am. Comp. § III.1. The trial judge, Hon. John J. Copertino, ordered the objected-to portions stricken from the PSIR. Id. at § III.2. Unbeknownst to Hirsch, and for reasons that are unclear, this order was never carried out. Id. Additionally, the PSIR included the "slanderous lie" that Hirsch penetrated his victim's rectum, even though the jury found Hirsch not guilty of that charge. Id. § III.3.[1] Subsequently, the Suffolk

---

[1] Hirsch does not allege that this portion was ordered redacted. That acquitted offenses appeared in Hirsch's PSIR is not inconsistent with current law governing whether weight may be accorded to acquitted offenses in sentencing and in determining inmate status. See, e.g., United States v. Watts, 519 U.S. 148, 154, 117 S. Ct. 633, 136 L. Ed. 2d 554 (1997) ("[A] sentencing

County Probation Department forwarded the PSIR to the New York State Department of Correctional Services ("DOCS"), in whose facilities Hirsch was housed.[2] Id. at § III.5.

During his incarceration, Hirsch was required to enter the Sex Offender Counseling Program ("SOCP") as a condition of earning good-time credits toward early release. Id. at § III.12. As part of entering the SOCP, Hirsch was required to confess to all the offending behavior listed in "the erroneous PSI Report." Id. at § III.13. Accordingly, as part of SOCP, Defendant Katherine Pernat ("Pernat"), a Counselor at the facility, insisted that Hirsch admit to the conduct outlined in his PSIR, including the "horrendous crimes that he had not committed or had been specifically found Not Guilty of committing." Id. at § III.14. And, as per the SOCP, "Waiver of Partial Confidentiality" (the "Waiver"), a confession Hirsch made during counseling would be reported to "the appropriate law enforcement agency," subjecting him to further prosecution and punishment for crimes he did not commit. Id. at §§ III.15-16.

---

court may consider conduct of which a defendant has been acquitted."); Vega v. Lantz, 596 F.3d 77, 80, 83 (2d Cir. 2010) (no constitutional violation where inmate was officially labeled a sex offender on the basis of an acquitted sexual assault charge).

[2] The Suffolk County Probation Department employees named in this action and allegedly responsible for not amending the PSIR have not moved to dismiss and are, therefore, not the subject of this opinion. See Am. Comp. III.5-10.

Thus, Hirsch contends, Defendant Pernant's "insistence on Plaintiff's 'confession' to the erroneous crimes listed in the PSI Report, effectively precluded Plaintiff from participating in [SOCP], thereby causing Plaintiff to lose his good-time credits." Id. at § III.17. According to Hirsch, this "insistence" violated his Fifth Amendment privilege against self-incrimination, and his Fifth and Fourteenth Amendment rights to due process and equal protection. Id. at § III.18.

Hirsch further alleges that, at his Sex Offender Level Hearing, the John Doe Defendant (now identified as Stephen Weber) added fifteen points to his score for "refusal to accept responsibility and his expulsion from treatment," improperly basing his decision, in part, on the stricken portions of Hirsch's PSIR, "as well as charges for which the jury specifically found the Plaintiff not guilty." Id. at § III.27.

Hirsch then commenced an action in Suffolk County Criminal Court, contesting Weber's determinations. On December 5, 2007, Hirsch won a partial victory when Hon. Barbara Kahn found that Weber "improperly relied" on the striken portions of the PSIR, and "improperly awarded" Hirsch fifteen points for "Drug and Alcohol Abuse." Id. at §§ III.28-29. But Judge Kahn's decision did not affect Hirsch's loss of goodtime credits, or the additional 15 points that Weber assigned Hirsch for refusing to accept responsibility and being expelled from

SOCP.  Id. at § III.31.  These additional 15 points resulted in Hirsch being designated a level two offender, severely restricting Hirsch's post-release liberty.  Id. at §§ III.31-32.

Finally, Hirsch alleges that the erroneous PSIR subjected him to an inquiry regarding whether he should be civilly confined, and was used to prepare his Sex Offender Registration Form.  Id. at § III.37.  This, in turn, led to the New York State Sex Offender Registry publishing "some of the lies in the PSI Report on the Internet." Id. at § III.39.[3]

DISCUSSION

I.  Motion to Dismiss for Lack of Subject Matter Jurisdiction

First, the Court will consider the Moving Defendants' motions to dismiss for lack of subject matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1).  The Moving Defendants argue that under the doctrine of collateral estoppel, this Court lacks jurisdiction to review the judgment adjudicating Plaintiff a level-two sex offender.  See Pernat and Bellamy's Br. 7-9; Weber's Br. 6-9.  Furthermore, the Moving Defendants argue that the Eleventh Amendment and the plain terms of § 1983 bar

---

[3] On February 27, 2009, Hirsch was resentenced to impose a term of three years post-release supervision.  On May 4, 2010, that resentencing was vacated and Hirsch's original sentence, which contained no post-release supervision, was reinstated.  See People v. Hirsch, 73 A.D.3d 807, 899 N.Y.S.2d 657 (2d Dep't 2010).  The parties did not brief what affect, if any, these decisions have had on this case.

Plaintiff's action insofar as he sues the Moving Defendants in their official capacity. See Pernat and Bellamy's Br. 10-11.[4]

At the outset, this Court notes that the doctrine of collateral estoppel "in no way implicates jurisdiction." Thompson v. County of Franklin, 15 F.3d 245, 253 (2d Cir. 1994). Thus, a claim of collateral estoppel is properly asserted in a 12(b)(6) motion. See id. Therefore, this Court will consider the Moving Defendants' collateral estoppel argument in the context of their 12(b)(6) motions. See infra part II.B.

---

[4] The Moving Defendants state in passing, "It is unclear whether the Rooker-Feldman doctrine [is] applicable to [this] matter." Pernat and Bellamy's Br. 8. Among other requirements, to trigger application of the Rooker-Feldman bar, "the plaintiff must complain of injuries caused by a state-court judgment." Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005) (emphasis added) (internal alterations and quotation marks omitted). See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005). Under Rooker-Feldman, "a party is not complaining of an injury 'caused by' a state-court judgment when the exact injury of which the party complains in federal court existed prior in time to the state-court proceedings, and so could not have been 'caused by' those proceedings." McKithen v. Brown, 481 F.3d 89, 98 (2d Cir. 2007). See id. (where plaintiff sought redress in federal court "for an injury that existed in its exact form prior to the state-court judgment," his injury was not "'caused by' the state court"; rather, the injury was "simply ratified [by], acquiesced in, or left unpunished by the state court.") (internal alterations and quotation marks omitted). Here, Plaintiff complains that the Moving Defendants violated his constitutional rights by precluding him from sex offender counseling, leading to denial of good-time credits, and by penalizing him through additional points on his risk assessment for this preclusion. Thus, the injury of which Plaintiff complains existed prior in time to the decision of the Suffolk County Court, which merely acquiesced in the violations alleged here. So Rooker-Feldman is inapplicable.

The Moving Defendants' Eleventh Amendment argument also fails. The Eleventh Amendment "bars a suit against state officials when the [unconsenting] state is the real, substantial party in interest" — that is, when the relief sought against an officer would, in fact, operate against the state. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984) (internal quotation marks omitted). Thus, under 42 U.S.C. § 1983, "neither a State nor its officials acting in their official capacities are 'persons'" within the meaning of the statute and, thus, that they cannot be liable under it in an action for damages. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989). Here, however, Hirsch expressly denies that he is suing the Moving Defendants in their official capacities. See Docket No. 38 at ¶ 28 ("Contrary to defendants' assertions, plaintiff is not suing defendants' Pernant and Bellamy in their official capacities . . . . plaintiff is suing them as individuals"); Docket No. 43 at ¶ 30 ("Contrary to defendants' assertion, plaintiff is not suing defendant Weber in his official capacity . . . . plaintiff is suing him as an individual"). So the Eleventh Amendment cannot protect the Moving Defendants.

That being said, the Moving Defendants, as individuals, have no authority to alter Hirsch's threat level,

risk score, or internet Sex Offender Registry information. So, because Hirsch has not sued the Moving Defendants in their official capacities, he cannot obtain the injunctive relief he seeks against them. See Adler v. Pataki, 204 F. Supp. 2d 384, 390 (N.D.N.Y. 2002) (prospective injunctive relief is available only "in circumstances where the state official has the authority to perform the required act"). Consequently, the Court only considers Hirsch's claims against the Moving Defendants to the extent that those claims seek money damages.

## II. Motion to Dismiss for Failure to State a Claim

Next, the Court considers the Moving Defendants' motions to dismiss, pursuant to FED. R. CIV. P. 12(b)(6), on the grounds that Plaintiff has not properly alleged any constitutional violations. See Pernat and Bellamy's Br. 11-16; Weber's Br. 10-11. The Moving Defendants also assert qualified immunity. See Pernat and Bellamy's Br. 17-18; Weber's Br. 12.

### A. Standard of Review

To withstand a 12(b)(6) motion, a plaintiff must have alleged "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). It is not necessary to plead specific facts, only to give "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). See Erickson v.

_Pardus_, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007). Moreover, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." _Erickson_, 551 U.S. at 94. The complaint is also "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." _Cortec Indus., Inc. v. Sum Holding L.P._, 949 F.2d 42, 47 (2d Cir. 1991). _See_ FED. R. CIV. P. 10(c). Finally, a "document filed _pro_ _se_ is to be liberally construed, and a _pro_ _se_ complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." _Erickson_, 551 U.S. at 94 (internal quotations and citations omitted).

B.  Collateral Estoppel

28 U.S.C. § 1738 establishes that the judicial proceedings of any state "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." Thus, the inquiry as to whether prior adjudication bars Plaintiff's claim in this Court is governed by New York law. _See_ _McKithen_, 481 F.3d at 105. Under New York law, collateral estoppel precludes this Court from deciding an issue if "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom

9

[issue preclusion] is asserted had a full and fair opportunity to litigate the issue in the first proceeding." <u>Hoblock v. Albany County Bd. of Elections</u>, 422 F.3d 77, 94 (2d Cir. 2005) (alteration in original). The Second Circuit has cautioned, however, that "issue preclusion will apply only if it is <u>quite clear</u> that these requirements have been satisfied, lest a party be precluded from obtaining at least one full hearing on his or her claim." <u>McKithen</u>, 481 F.3d at 105 (internal alterations omitted). In keeping with this cautionary principle, where a state-court "opinion unambiguously relies on state law alone, [a district court] cannot say that the [state] court decided federal constitutional questions." <u>Hoblock</u>, 422 F.3d at 94.

Here, Justice Kahn did decide the appropriateness of the 15 points assessed for non-participation in SOCP, stating, "As to the other categories of the risk level assessment instrument [ie., those pertaining to preclusion from SOCP], the Court is of the opinion that the defendant was awarded the appropriate number of points." Furthermore, Justice Kahn was fully aware that the Board's assessment relied in part on the erroneous portions of the PSIR, as she specifically found that such reliance was improper. <u>See</u> Am. Comp. Ex. G.

In addition, Plaintiff did litigate the appropriateness of the 15 points. As he states, "At the hearing before Justice Kahn, the plaintiff raised the issue of having

the fifteen points assessed against him for his preclusion from treatment removed . . . ." Reply to Pernat and Bellamy's Mot. ¶ 26. However, it is ultimately unclear whether Plaintiff did, in fact, litigate the constitutionality of the 15 points. Justice Kahn cited only New York law regarding the burden of proof, the forms of evidence admissible in such a proceeding, and the circumstances warranting an upward departure from the presumptive risk level. Am. Comp. Ex. G. Nowhere did Justice Kahn discuss the constitutional questions raised here. Thus, in light of the lack of clarity as to whether Plaintiff actually raised these constitutional questions and whether Justice Kahn decided them, and the cautionary principles that have been articulated by the Second Circuit, it would be to dismiss Plaintiff's claims under collateral estoppel. See McKithen, 481 F.3d at 105; Hoblock, 422 F.3d at 94. This is particularly true given that Plaintiff's claims should be dismissed on other grounds. See generally Flores v. Keane, 211 F. Supp. 2d 426, 434 n.12 (S.D.N.Y. 2001) (for judicial economy purposes, courts can choose to dismiss based on "easily resolvable" grounds, rather than address procedural bars).

C.  Qualified Immunity

The Moving Defendants argue that they are entitled to dismissal of Hirsch's claims on the basis of qualified immunity. They contend that conditioning receipt of good-time credits on

completion of a sex-offender counseling program requiring inmates to make self-incriminating admissions, and increasing a sex-offender's post-incarceration threat-level assessment for failure to participate in that counseling program, violated no clearly established constitutional right. <u>See</u> Pernat and Bellamy's Br. 17-18; Weber Br. 12-13.[5]  The Court agrees.

    1.   <u>The Qualified Immunity Doctrine</u>

---

[5] Under <u>Heck v. Humphrey</u>, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994), when a state prisoner's § 1983 claim for damages "would necessarily imply the invalidity of his conviction or sentence[,] . . . the complaint must be dismissed unless . . . the conviction or sentence has already been invalidated." <u>See</u> <u>id.</u> at 487.  Thus, actions that "attack[] the fact or length of [a state prisoner's] confinement" are exempt from the scope of § 1983, preserving habeas corpus as the exclusive remedy for such claims.  <u>See</u> <u>id.</u> at 481-82 (internal alterations omitted).  This exemption extends to claims that imply the invalidity of a loss of good-time credits where habeas is otherwise available.  <u>See</u> <u>Edwards v. Balisok</u>, 520 U.S. 641, 648, 117 S. Ct. 1584, 137 L. Ed. 2d 906 (1997).  Here, judgment in Plaintiff's favor would imply the invalidity of his loss of good-time credits; however, because Plaintiff has already served that time, he has no habeas remedy for this loss.  Thus, <u>Heck</u> and <u>Edwards</u> do not bar Plaintiff's § 1983 claim as to his good-time credits.  <u>See</u> <u>Huang v. Johnson</u>, 251 F.3d 65, 75 (2d Cir. 2001) (§ 1983 available to challenge the length of confinement where prisoner has been released from custody and thus has no habeas remedy).  Moreover, Plaintiff challenges the conditions of his supervised release because judgment in his favor would imply the invalidity of his level-two status; however, Plaintiff does not challenge the fact or length of his supervised release.  Thus, this Court may also consider his § 1983 claim with respect to his threat level.  <u>See</u> <u>Jenkins v. Haubert</u>, 179 F.3d 19, 27 (2d Cir. 1999) ("[A] § 1983 suit . . . challenging the validity of a disciplinary or administrative sanction that does not affect the overall length of the prisoner's confinement is not barred.").

The doctrine of qualified immunity arises from an awareness of the potential social costs of permitting damages suits against government officials, "including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." Anderson v. Creighton, 483 U.S. 635, 638, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). When a plaintiff alleges that an official has deprived him of a constitutional right under color of state law, the Supreme Court has created a two-step inquiry for determining whether the official is entitled to immunity from suit: "First, a court must decide whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Pearson v. Callahan, __ U.S. __, 129 S. Ct. 808, 815-16, 172 L. Ed. 2d 565 (2009) (internal citations and quotation marks omitted). See Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001).

Courts, however, may reverse this sequence at their discretion. See id. at 818. Departure is appropriate in "cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right." Id. at 820. In such circumstances, disposing of the

13

qualified immunity issue on the basis of the "clearly established" prong obviates the need to address whether a constitutional violation has actually occurred, adhering to the principle that courts should not address "questions of constitutionality unless such adjudication is unavoidable." See id. at 821 (internal quotation marks and alterations omitted). Here, reversing the inquiry is warranted because Hirsch has plainly not alleged the violation of a right that was clearly established. See infra part II.B.4.

## 2. Qualified Immunity Under Rule 12(b)(6)

Because qualified immunity frequently "involves a fact-specific inquiry, it is generally premature to address the defense . . . in a motion to dismiss." Maloney v. County of Nassau, 623 F. Supp. 2d 277, 292 (E.D.N.Y. 2007) (internal alterations and quotation marks omitted). Nevertheless, "a traditional qualified immunity defense may . . . be asserted on a Rule 12(b)(6) motion as long as [it] is based on facts appearing on the face of the complaint." McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004). See Green v. Maraio, 722 F.2d 1013, 1019 (2d Cir. 1983) ("[T]he complaint itself establishes the circumstances required [for] a finding of qualified immunity and, consequently, there is no reason to require an answer, a hearing or a trial."). Here, resolution of the qualified immunity issue under Rule 12(b)(6) is particularly appropriate,

because the Court can reverse the typical qualified immunity analysis and decide the purely legal question of whether Hirsch has alleged the violation of a clearly established right. <u>See</u> <u>Higazy v. Templeton</u>, 505 F.3d 161, 170 (2d Cir. 2007) ("The matter of whether a right was clearly established at the pertinent time is a question of law."). Conducting the inquiry at this time also comports with the "importance of resolving immunity questions at the earliest possible stage in litigation," so that "insubstantial claims against government officials will be resolved prior to discovery." <u>Pearson</u>, 129 S. Ct. at 815 (internal quotation marks and alterations omitted).

### 3.   <u>Hirsh's Protection Against Self-Incrimination</u>

Courts must determine whether rights are clearly established "in light of the specific context of the case, not as a broad general proposition." <u>Distiso v. Town of Wolcott</u>, 352 Fed. App'x 478, 481 (2d Cir. 2009) (quoting <u>Saucier</u>, 533 U.S. at 201).   A more generalized approach would make "it impossible for officials reasonably to anticipate when their conduct may give rise to liability for damages." <u>Anderson v.</u> <u>Creighton</u>, 483 U.S. 635, 639, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987) (internal quotation marks and alterations omitted).[6]

---

[6] <u>See also</u> <u>Anderson v. Creighton</u>, 483 U.S. 635, 639, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987) ("For example, the right to due process [is] clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that

Thus, the right at issue here is not the general Fifth Amendment protection against compelled self-incrimination (which, no doubt, is clearly established); rather, it is Plaintiff's right not to have to choose between making self-incriminating admissions in SOCP on the one hand, and being precluded from SOCP, losing good-time-credit eligibility, and risking a higher post-release threat assessment on the other.

A right is clearly established, if its "contours [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson, 483 U.S. at 640. The exact conduct in question need not previously have been held unlawful; nevertheless, "in the light of the pre-existing law the unlawfulness must [have been] apparent." See id. Ultimately, this inquiry asks "whether the state of the law in [2006 and 2007] gave [Defendants] fair warning that their alleged [conduct] was unconstitutional." Hope v. Pelzer, 536 U.S. 730, 741, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002). In making this determination, "[o]nly Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant." Moore v. Vega, 371 F.3d 110, 114 (2d Cir. 2004).

The Supreme Court has held that threatening to penalize the exercise of the Fifth Amendment protection against

Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right.").

self-incrimination may amount to unconstitutional compulsion. See Minnesota v. Murphy, 465 U.S. 420, 438-39, 104 S. Ct. 1136, 79 L. Ed. 2d 409 (1984). Nevertheless, requiring an individual to choose between asserting this protection or suffering even grave detriment does not always offend the Constitution. See McGautha v. California, 402 U.S. 183, 213, 91 S. Ct. 1454, 28 L. Ed. 2d 711 (1971) (no unconstitutional compulsion when defendant was forced to choose between potential self-incrimination at trial, or else, by invoking his right to silence, increasing his likelihood of receiving a death sentence), abrogated on other grounds by Furman v. Georgia, 408 U.S. 238, 92 S. Ct. 2726, 33 L. Ed. 2d 346 (1972).

In McKune v. Lile, 536 U.S. 24, 122 S. Ct. 2017, 153 L. Ed. 2d 47 (2002), the Supreme Court adjudicated whether circumstances similar to those Hirsch experienced presented compulsion in violation of an incarcerated sex offender's Fifth Amendment rights. There, the plaintiff's refusal to participate in counseling that required him to make potentially self-incriminating statements resulted in the loss of various privileges, including transfer to a maximum-security unit. See id. at 31, 38. Noting in dicta that the plaintiff's "decision not to participate in the [program] did not extend his term of incarceration[, nor] affect his eligibility for good-time credits," id. at 38, a four-justice plurality held that the

17

program did not "compel prisoners to incriminate themselves in violation of the Constitution," id. at 35. The Supreme Court left open the question of whether threatening the loss of good-time-credit eligibility for refusing to incriminate oneself in prison sex offender counseling is a constitutional violation.

The Second Circuit has yet to address the issue in light of McKune.[7] But, by the time of the conduct alleged here, two other circuits had rejected nearly identical arguments to those that Hirsch makes. See Searcy v. Simmons, 299 F.3d 1220 (10th Cir. 2002) (no unconstitutional compulsion where refusal to participate in counseling program requiring disclosure of past, un-prosecuted offenses resulted in loss of ability to earn additional good-time credits);[8] Ainsworth v. Stanley, 317 F.3d 1, 3 (1st Cir. 2002) (no unconstitutional compulsion where refusal to disclose potentially incriminating sexual misconduct barred participation in counseling and where non-participation "almost always" resulted in parole denial), cert. denied, 538 U.S. 999,

_____

[7] The Second Circuit has since determined in the habeas context that, in light of McKune, denying good-time credits for refusing to participate in a New York State sex offender counseling program that required disclosure of un-prosecuted offenses and, thus, involved potential self-incrimination, was not contrary to "clearly established Federal law" within the meaning of 28 U.S.C. § 2254(d)(1). See Edwards v. Goord, 362 F. App'x 195, 198-99 (2d Cir. 2010)

[8] The Tenth Circuit had again reached the same conclusion in Wirsching v. Colorado, 360 F.3d 1191 (10th Cir. 2004).

123 S. Ct. 1908, 155 L. Ed. 2d 825 (2003). And, while the Ninth Circuit arguably held otherwise, see United States v. Antelope, 395 F.3d 1128, 1138 (9th Cir. 2005), this circuit split refutes any suggestion that Hirsch had a "clearly established" Fifth Amendment right to not incriminate himself as part of SOCP.[9]

It follows then that the Court must dismiss Hirsh's self-incrimination claims against the Moving Defendants on qualified immunity grounds. See, e.g., Mitchell v. Forsyth, 472 U.S. 511, 531-34, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985) (no clearly established constitutional protection against certain warrantless wiretapping where most relevant Supreme Court holding at the time explicitly avoided the question, and where lower courts had decided conflictingly); Dean v. Blumenthal, 577 F.3d 60, 69 (2d Cir. 2009) (no clearly established First Amendment right to receive campaign contributions where no holding of either the Supreme Court or Second Circuit supported its existence).

4.    Due Process Claims

---

[9]    Hirsch also cites a Northern District case. But the Second Circuit vacated this decision on March 22, 2006, before all the conduct that Hirsch complains about took place.[9] See Donhauser v. Goord, 181 Fed. App'x 11 (2d Cir. 2006) (summary order remanding for further development of the factual record). And, although this Northern District case resulted in an arguably pro-prisoner settlement in 2008, Defendants could not have known how this case would turn out in late 2006 and 2007.

Hirsch also contends that the denial of goodtime credits and his adjudication as a higher level sex offender violated his due process rights. But, as to the Moving Defendants, these claims also fail on qualified immunity grounds.

First, to the extent that Hirsch alleges violations of procedural due process, it is undisputed that Hirsch had a hearing before Weber, and then was able to challenge Weber's determinations before Judge Kahn. Hirsch pleads no facts to suggest that he was denied the ability to call witnesses, introduce evidence, or otherwise fully participate in these procedures. So any procedural due process claim, if asserted, fails on its face without further discussion.

Substantive due process is a slightly trickier question. Hirsch had no liberty interest in goodtime credits he was not awarded because of his refusal to participate in sex offender counseling. See Fifield v. Eaton, 669 F. Supp. 2d 294, 297 (W.D.N.Y. 2009); see also Barna v. Travis, 239 F.3d 169, 170 (2d Cir. 2001). But, during the relevant period, New York did recognize a liberty interest in a prisoner not being assigned a higher level sex offender status than appropriate. See People v. David W., 95 N.Y.2d 130, 137, 733 N.E.2d 206, 210-11, 711 N.Y.S.2d 134, 138-39 (N.Y. 2000) (holding that a defendant's "liberty interest in not being stigmatized as a sexually violent

predator, is substantial" and describing the substantial liberty burdens imposed on Level 3 sex offenders).

That being said, Hirsch points to no "clearly established" law that precluded Weber from considering Hirch's failure to participate in SOCP in calculating his sex offender score. Similarly, to the extent that Hirsch argues that Weber indirectly punished him for offenses he was acquitted of (because Hirsch refused to confess to them during counseling), Hirsch points to no clearly established law suggesting that Weber could not, in fact, consider acquitted charges in determining an offense score. Indeed, if anything, the relevant law was to the contrary. See <u>Youngs v. Division of Probation and Correction Alternatives</u>, 667 N.Y.S.2d 1021, 1024 (N.Y. County Ct., Youngs County 1997) ("since the Risk Assessment Guidelines and Commentary allowed the DPCA to review the record despite the acquittal, this Court cannot say, that DPCA's determination to assess points for this factor was arbitrary and capricious or an abuse of discretion"); <u>see</u> <u>also</u> <u>In re Parker</u>, 812 N.Y.S.2d 230, 237 (N.Y. Sup. Ct., Kings County 2005) (vacated convictions can be used to determine sex offender score, if People can establish by "clear and convincing evidence" that defendant committed these offenses).

5. <u>Equal Protection Claims</u>

Hirsch also alleges that the Moving Defendants' conduct violated his Equal Protection rights. But Hirsch has not alleged that he is a member of any suspect class. <u>See</u> <u>Lee v. Governor of N.Y.</u>, 87 F.3d 55, 60 (2d Cir. 1996) ("[P]risoners either in the aggregate or specified by offense are not a suspect class . . . ."). Nor has Hirsch alleged that he was the victim of differential treatment as compared to other similarly situated prisoners. <u>See</u> <u>Giordano v. City of New York</u>, 274 F.3d 740, 750-51 (2d Cir. 2001). Thus, the Moving Defendants are not liable for violating Hirsch's right to equal protection of the laws if their actions were rationally related to a legitimate state interest. <u>See</u> <u>Lee</u>, 87 F.3d at 60.

Here, Hirsch points to no clearly established law holding that there is no legitimate state interest in conditioning certain benefits (<u>e.g.</u>, goodtime credits, sex offender score point reductions) on a sex offender participating in counseling. On the contrary, the law is settled that the State has a legitimate interest in requiring prisoners to accept responsibility for their past misconduct as part of a therapeutic process designed to reduce recidivism. <u>See</u> <u>McKune</u>, 536 U.S. at 33 ("The rate of recidivism of treated sex offenders is fairly consistently estimated to be around 15%, whereas the rate of recidivism of untreated offenders has been estimated to

be as high as 80%") (internal quotation marks and alterations omitted).  Indeed, if the State could not tie rehabilitative progress to some concrete incentive, such as the award of good-time credits, the effectiveness of its counseling program would be severely undermined.  See id. at 47-48.  And, at least for qualified immunity purposes, the fact that Hirsch was acquitted of certain charges does not alter this equation.  For, although the Court could find no authority directly on point, the law – if anything – suggests that acquitted conduct can still be used for collateral purposes without offending the Constitution. See generally Watts, 519 U.S. at 154 ("we are convinced that a sentencing court may consider conduct of which a defendant has been acquitted"); Young v. Apker, 05-CV-7653, 2007 WL 2049739, at *9 (S.D.N.Y. 2007) (noting that parole board can consider acquitted charges).  It follows then that no clearly established law required the State to, for therapeutic purposes, ignore evidence of Hirsch's conduct, simply because that evidence was insufficient to convict him beyond a reasonable doubt.

### 6. Double Jeopardy Claims

Finally, Hirsh alleges that the denial of goodtime credits and his elevated sex offender status violated the Constitution's Double Jeopardy clause.  But, once again, the Moving Defendants are entitled to dismissal on qualified immunity grounds, because no clearly established law supports

such a proposition. Indeed, once again, the relevant authority is to the contrary. See A.A. ex rel. M.M. v. New Jersey, 341 F.3d 206, 209 (3d Cir. 2003) (sex offender registration is not punitive, so it does not implicate Double Jeopardy clause, interpreting Smith v. Doe, 538 U.S. 84, 123 S. Ct. 1140, 155 L. Ed. 2d 164 (2003)); U.S. v. Brown, 59 F.3d 102, 105 (9th Cir. 1995) ("withholding of good time credit . . . do[es] not constitute punishment for double jeopardy purposes").

It follows then that Hirsch's claims against the Moving Defendants must be dismissed in their entirety.

## CONCLUSION

The Moving Defendants' motions to dismiss (Docket Nos. 37, 39, 41) are GRANTED. The Clerk of the Court is directed to terminate Defendants Bellamy, Pernat, and John Doe/Stephen Weber.

SO ORDERED

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Date: September 30, 2010
      Central Islip, New York