UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
JOSEPH S. HIRSCH,

                    Plaintiff,

                                        <u>MEMORANDUM & ORDER</u>
          -against-                     08-CV-2660(JS)(AKT)

SUFFOLK COUNTY, KATHERINE PERNAT,
and JOSEPH TORTORA,[1]

                    Defendants.
---------------------------------X
APPEARANCES
For Plaintiff:          Philip M. Smith, Esq.
                        Seyfarth Shaw LLP
                        620 Eighth Avenue
                        New York, NY 10018


For Defendants:
Suffolk County          Brian C. Mitchell, Esq.
                        Suffolk County Attorney's Office
                        100 Veterans Memorial Highway
                        P.O. Box 6100
                        Happauge, NY 11788


Katherine Pernat
and Joseph Tortora      Toni Logue, Esq.
                        New York State Attorney General's Office
                        200 Old Country Road, Suite 460
                        Mineola, NY 11501


SEYBERT, District Judge:

---

[1] Throughout the pendency of this case, certain defendants have
been added, dropped, identified, reinstated, and replaced.  As a
result of the case's somewhat complex history, the Docket as it
stands has not been updated to reflect certain changes.
Accordingly, and as discussed more fully in the Court's
recitation of the procedural history of the case, the Clerk of
the Court is DIRECTED to add Suffolk County as a defendant and
to TERMINATE all parties EXCEPT Suffolk County, Katherine
Pernat, and Joseph Tortora.

Plaintiff Joseph S. Hirsch ("Hirsch" or "Plaintiff") commenced this action pursuant to 42 U.S.C. § 1983 on June 25, 2008, against Suffolk County (the "County"), Katherine Pernat ("Pernat") and Joseph Tortora ("Tortora," and together with Pernat, the "State Defendants"), alleging violations of his federal constitutional rights in connection with the assignment of his post-conviction sex offender designation and his loss of good time credits while incarcerated. Presently before the Court are: (1) the County's motion for summary judgment (Docket Entry 114); (2) the State Defendants' motion for summary judgment (Docket Entry 115); and (3) Plaintiff's motion to revise the Court's prior holding that Hirsch has no constitutional interest in earning good time credits during his incarceration (Docket Entry 106). For the following reasons, Plaintiff's motion to revise is DENIED, and the County's and the State Defendants' motions for summary judgment are GRANTED.

<u>BACKGROUND</u>

I.  <u>Factual Background</u>[2]

A.  <u>Hirsch's Arrest, Trial, and Conviction in Suffolk County</u>

In March of 1999, Hirsch was indicted in Suffolk County Criminal Court for one count of Aggravated Sexual Abuse in the

---

[2] The following material facts are drawn from the parties' Local Civil Rule 56.1 Statements, their evidence in support, and the Court's independent review of the record. Because the County and the State Defendants have lodged separate motions for

Second Degree, in violation of New York Penal Law § 130.67; six counts of Sexual Abuse in the First Degree, in violation of New York Penal Law § 130.65; two counts of Assault in the Second Degree, in violation of New York Penal Law § 120.05; and one count of Unlawful Imprisonment in the Second Degree, in violation of New York Penal Law § 135.05. (See Hirsch Decl., Docket Entry 120, Ex. 2.) After a jury trial, Hirsch was convicted of two counts of Sexual Abuse in the First Degree, two counts of Assault in the Second Degree, and one Count of Unlawful Imprisonment in the Second Degree. (County's 56.1 Stmt. ¶ 1.) He was acquitted of the Aggravated Sexual Abuse in the Second Degree charge. (County's 56.1 Stmt. ¶ 1.) Under the New York Penal Law, a person is guilty of Aggravated Sexual Abuse in the Second Degree when "he or she inserts a finger in the vagina, urethra, penis, rectum, or anus, of another person . . . . when the other person is incapable of consent." N.Y. PENAL LAW § 130.67(1)(b).

In contemplation of Hirsch's sentencing, the Suffolk County probation department prepared a Pre-Sentence Investigation

---

summary judgment, each has provided their own Rule 56.1 Statement. (See County's 56.1 Stmt., Docket Entry 114-4; State Defs.' 56.1 Stmt., Docket Entry 115-1.) In response, Plaintiff has submitted counterstatements to both. (Pl.'s Counterstmt. to County's 56.1 Stmt., Docket Entry 122; Pl.'s Counterstmt. to State Defs.' 56.1 Stmt., Docket Entry 123.) The Court has synthesized these documents in formulating a discussion of the factual background of the case. Any relevant factual disputes are noted.

Report ("PSIR"). New York State rules require a PSIR to be "impartial, fair, factual, analytical, pertinent, and relevant to the objective of the report," which is "to provide the court with relevant and reliable information." N.Y. COMP. CODES R. & REGS., tit. 9, §§ 350.3-350.5. As a result, "the report [must] contain relevant and reliable information." N.Y. COMP. CODES R. & REGS., tit. 9, § 350.7(a). Generally, in preparing a PSIR, the probation officer contacts the assistant district attorney who prosecuted the case, the police officers, and the victim, and includes in the PSIR a statement from each. (Gilson Dep. Tr. at 15:3-22:6.)[3] Only in rare cases would the probation officer question or investigate the verity of the victim's statement. (Gilson Dep. Tr. at 24:14-25:21; Iaria Dep. Tr. at 35:7-37:16.) In fact, according to the probation officer that prepared Hirsch's PSIR, the fact that a defendant is acquitted of a certain charge would not cause her to investigate or question a victim's statement that insisted that the charged crime occurred. (Gilson Dep. Tr. at 24:14-25:21.)

---

[3] Though Plaintiff has provided the Court with courtesy copies of the full deposition transcripts of all material witnesses, the County only filed excerpted portions of the deposition transcripts it relied upon in its Rule 56.1 Statement. To ensure completeness of the electronic record, the County is directed to refile its Rule 56.1 Statement, attaching as exhibits the complete versions of any deposition transcripts cited therein.

As a result of the probation department's policy of
including a victim's unverified account of events, Hirsch's
victim's allegation that he penetrated her rectum was included in
his PSIR.[4]  (Hirsch Decl. Ex. 1.)  Specifically, Hirsch's PSIR
states:

> [C]ontact was made with . . . the victim in
> this case.  She explained she met the
> defendant through a personal ad . . . . When
> she returned [from the bathroom], she
> questioned the defendant about what he put in
> her drink.  It was at this time the room began
> to spin.  She recalled running for the front
> door, which she found to be closed and locked.
> The last thing she recalled at this time was
> the defendant saying, "Bitch sit here."  [The
> Victim] said she woke up to find the defendant
> penetrating her rectum and beating her about
> the head.

(Hirsch. Decl. Ex. 1 (emphasis added).)  Thus, although Hirsch had
been acquitted of the charge arising from the allegation that he
penetrated the victim, the victim's allegation was nonetheless
included in the PSIR.

---

[4] At his sentencing before Justice John Copertino of the Suffolk
County Supreme Court, Hirsch's counsel objected to certain
portions of the PSIR that he believed did not comport with the
evidence at trial, and Justice Copertino ordered those objected-
to portions stricken.  (County's 56.1 Stmt. ¶¶ 9, 13.)
Unbeknownst to Hirsch, and for reasons that are unclear, this
order was never carried out, and the unredacted PSIR followed
Hirsch to state prison. (County's 56.1 Stmt. ¶¶ 9, 13.)
Hirsch's counsel did not object, however, to the recitation in
the PSIR of the victim's statement to probationary officers.
(County's 56.1 Stmt. ¶ 19.)

B.  <u>Hirsch's Incarceration in New York State</u>

The first effect of the inclusion of the victim's statement in Hirsch's PSIR occurred immediately after his transfer into state custody.  His first stop was the Downstate Correctional Facility, a reception facility in which all inmates are initially housed.  (State Defs.' 56.1 Stmt. ¶ 25.)  Here, Hirsch met Defendant Tortora, an Offender Rehabilitation Coordinator.  (State Defs.' 56.1 Stmt. ¶ 26.)  Tortora conducted Hirsch's "Intake Interview," a roughly twenty-minute meeting where Tortora would recommend certain rehabilitation programs and determine Hirsch's ultimate placement within the New York State prison system.  (State Defs.' 56.1 Stmt. ¶¶ 26, 29, 30.)  Tortora, using both his interview with Hirsch and documentation provided by the County (including the PSIR), entered into the New York State Department of Corrections and Community Supervision ("DOCCS") database a "Description of Criminal Behavior."  (State Defs.' 56.1 Stmt. ¶¶ 27-28.)  Relying upon the victim's statement in the PSIR that Hirsch penetrated her rectum, Tortora wrote:

> In the instant offense the subject on Jan. 14, '99 after meeting a woman through a personal ad in a newspaper, met said woman, bringing her to his apartment under the premise of making a phone call.  Subject then administered to the female, a drug in a drink, which caused stuper & consciousness & physical impairment.  When the female victim succumbed to said drug, <u>the subject penetrated her rectum with his penis</u> & beat her about the head [sic throughout] . . . .

(Pl.'s Counterstmt. to County's 56.1 Stmt. Ex. 7. (emphasis added).) Tortora explained that because the PSIR did not indicate that Hirsch penetrated the victim's rectum with a certain object, he assumed that he did so with his penis. (Tortora Dep. Tr. at 23:14-25:14.) Tortora did not explain, nor did counsel inquire at his deposition, why Tortora changed this clause from a recitation of the victim's statement--it was preceded by "[victim] states" in the PSIR--to a statement of fact in his description.

During his incarceration, Hirsch was required to enter into the Sex Offender Counseling Program ("SOCP") as a condition of earning good time credits toward early release. (Pl.'s Counterstmt. to State Defs.' 56.1 Stmt. at 22.) The SOCP endeavors to rehabilitate the offender by encouraging him to (1) accept responsibility for his behavior, (2) understand his cycle of sexually offending behavior, and (3) develop appropriate relapse prevention strategies. (Pernat Aff., Docket Entry 115-4, Ex. B at 3.) Therefore, a key tenet of the SOCP is that offenders be required to accept responsibility for their crimes. (Logue Decl., Docket Entry 115-7, Ex. 7 at 4.) Additionally, a participant in the SOCP must sign a "Waiver of Partial Confidentiality" form that allows counselors to report confessions made during counseling to the appropriate law enforcement agency. (Pl.'s Counterstmt. to State Defs.' 56.1 Stmt., Ex. 5 at 58.) Hirsch refused to participate in the SOCP, and signed multiple forms indicating his

understanding that his refusal would disqualify him from earning good time credits.  (See Pernat Aff. Ex. F.)

The parties dispute why Hirsch refused to participate in the SOCP.  According to Hirsch, Defendant Pernat, a Program Counselor, insisted that Hirsch could not participate without admitting to the conduct outlined in Tortora's intake form-- penetrating the victim's rectum with his penis.  (Pl.'s Counterstmt. to State Defs.' 56.1 Stmt. at 23.)  Hirsch maintains that he was prepared to accept responsibility for the conduct of which he was convicted, but Pernat conditioned his participation on confessing to a "rape" that he did not commit.  (Pl.'s Counterstmt. to State Defs.' 56.1 Stmt. at 23.)  Aware that counselors would report any confessions to law enforcement, Hirsch explains that he was left with the dilemma of either incriminating himself by admitting to a crime he did not commit or refusing to enter the SOCP.  (Pl.'s Counterstmt. to State Defs.' 56.1 Stmt. at 23.)  According to the State Defendants, Hirsch elected not to enter the SOCP because he maintained his innocence of all charges and was in the process of appealing his sentence.  Though Pernat does not recall why Hirsch chose not to enter the SOCP, (Pernat Aff. ¶ 12), the State Defendants rely upon Hirsch's own explanation in multiple refusal forms.  In January 2006, Hirsch wrote that he was refusing to participate in the SOCP because, "I have [two] appeals pending and the SOCP requirement that I confess to a crime

I didn't commit and fabricate sordid details to events that never happened violates my Fifth Amendment right against self-incrimination." (Pernat Aff. Ex. F.) In a later refusal form (June 2006), Hirsch indicated that he was refusing to participate in SOCP because he "ha[s] appeals pending in this case." (Logue Decl. Ex. 8.).

C.   Denial of Hirsch's Good Time Credit

With his release date approaching and still having not participated in the SOCP, Hirsch appeared before his prison's Time Allowance Committee (the "TAC") in October 2006. (Logue Decl. Ex. 11.) The TAC questioned Hirsch as to why he refused to participate in the SOCP, and understood from him that he had refused to participate because his case was pending on appeal. (Logue Decl. Ex. 11.) Citing his refusal to participate in the SOCP, the TAC recommended that the entirety of his good time credits (ten months and twelve days) be withheld. (Logue Decl. Ex. 11.)

D.   Hirsch's Classification as a Level Two Sex Offender

The New York State Sex Offender Registration Act, N.Y. CORRECT. LAW § 168 et seq., requires that prior to the release of an inmate convicted of certain crimes, the inmate be certified as a sex offender and assessed for risk of repeat offense. In connection with that assessment, the New York State Board of Examiners of Sex Offenders (the "Board") reviews the offender's file and recommends to the sentencing court an offender "Level."

A "Level One" offender is one who demonstrates a low risk of re-offense, while a "Level Three" offender is considered a high-risk re-offender. See N.Y. CORRECT. LAW § 168-i(6)(a)-(c). The Board's recommendation is guided largely by the Risk Assessment Instrument ("RAI"), a rubric that evaluates the offender based upon certain enumerated criteria--such as, for example, the acceptance of responsibility--and calculates a "score." (See Logue Decl. Ex. 12.) A score of seventy or less on the RAI counsels the Board to recommend that the offender be classified as a Level One offender, a score between seventy five and one hundred five results in a Level Two recommendation, and a score greater than one hundred ten results in a Level Three recommendation.[5] (See Logue Decl. Ex. 12.) The Board may request a departure from the classification level indicated in the RAI.

The RAI penalizes an offender who has not accepted responsibility for his crimes. See N.Y. CORRECT. LAW § 168-i(5)(f)-(g). Where an offender maintains his innocence, ten points are added to his score. (See Logue Decl. Ex. 12.) Alternatively, where the offender, based on his refusal to accept responsibility, refuses to enter or has been expelled from a treatment program,

---

[5] The level at which an offender is classified significantly impacts the offender's liberty upon release. The limitation with which Hirsch takes greatest issue is the Level Two sex offender's being subject to the state's release to the public of the offender's name, photograph, address, and other personal details. See N.Y. CORRECT. LAW § 168-I(6)(b).

fifteen points are added to his score.  (See Logue Decl. Ex. 12.)

Because an offender may only receive one of these alternative

penalties, an offender who satisfies both of these criteria

receives the higher fifteen point penalty.  The alternative nature

of this penalty scheme results in a five-point difference between

the penalty awarded to an offender who refused treatment (fifteen

points) and one who maintained his innocence (ten points).  (See

Logue Decl. Ex. 12.)

In 2007, in anticipation of Hirsch's expected release,

the Board prepared Hirsch's RAI.  (See Logue Decl. Ex. 12.)  The

Board observed that "[i]n a letter addressed to the Board of

Examiners written by his attorney, Hirsch maintains his

innocence," and that Hirsch "refused to participate in the sex

offender program and he is scored for his refusal." (Logue Decl.

Ex. 12.)  Accordingly, because Hirsch satisfied both criteria in

the acceptance of responsibility category, he was given the higher

fifteen point penalty resulting from his refusal to enter into the

SOCP.  He received a total score of eighty.[6]  As a result of this

_____

[6] In reality, Hirsch's RAI resulted in a score of ninety five
(still within the Level Two range), and the Board requested an
upward departure based on the brutality of his crime.  (Logue
Decl. Ex. 12.)  Hirsch contested the findings of the Board in
Suffolk County Criminal Court.  Justice Barbara Kahn declined
the Board's request for an upward departure and found that
Hirsch was improperly awarded fifteen points under the category
of Drug or Alcohol Abuse.  (State Defs.' 56.1 Stmt. ¶ 71.)
Justice Kahn also found that other than the points related to
alcohol abuse, "[Hirsch] was awarded the appropriate number of

score Hirsch was classified as a Level Two (moderate risk) sex offender.  (See Logue Decl. Ex. 12; State Defs.' 56.1 Stmt. ¶ 71.)

II.  Procedural History

Hirsch commenced this action on June 25, 2008, and filed an Amended Complaint on October 21, 2009.  (See Compl., Docket Entry 1; First Am. Compl., Docket Entry 33.)  The Amended Complaint named certain Suffolk County employees, Karen Bellamy, Pernat, and a John Doe as defendants.  (First Am. Compl. ¶ I.)  In December, 2009 Pernat and Bellamy moved to dismiss the First Amended Complaint on the grounds of sovereign immunity, collateral estoppel, and qualified immunity.  (Pernat & Bellamy Mot. to Dismiss, Docket Entry 37.)  Shortly thereafter, Steven Weber appeared, identified himself as the John Doe defendant, and also moved to dismiss.  (Weber Mot. to Dismiss, Docket Entry 41.)  In September 2010, the Court rejected the sovereign immunity and collateral estoppel arguments, but granted the motion to dismiss on qualified immunity grounds.  See Hirsch v. Desmond, No. 08-CV-2660, 2010 WL 3937303 (E.D.N.Y. Sept. 30, 2010) (hereinafter "Hirsch I").  Notably, the Court found then that Hirsch "had no liberty interest in good time credits he was not awarded because

_____

points."  (State Defs.' 56.1 Stmt. ¶ 71.)  Accordingly, the removal of the improper fifteen points resulted in Hirsch receiving a score of eighty and falling within the Level Two offender range.

12

of his refusal to participate in sex offender counseling." Id. at *7.

In August 2011, before conducting any discovery, the then-named Suffolk County defendants (Desmond, Gilson, and Young) moved for summary judgment on the grounds of absolute and qualified immunity. (First Mot. Summ. J., Docket Entry 60.) The Court granted that motion to the extent the First Amended Complaint named certain county employees in their individual capacities, but denied summary judgment to the extent those defendants were named in their official capacities. See Hirsch v. Desmond, No. 08-CV-2660, 2012 WL 537567 (E.D.N.Y. Feb. 15, 2012) (hereinafter "Hirsch II").

In April 2012, Hirsch moved to file a Second Amended Complaint. (Docket Entries 72, 74.) The Second Amended Complaint asserted due process and equal protection claims against the same Suffolk County defendants and reasserted due process and equal protection claims against Pernat and a second, then-unidentified state defendant. (Second Am. Compl., Docket Entry 80.) Pernat, by letter to the Court, contested the proposed amendment by arguing that the claims in the Second Amended Complaint mirror those already dismissed by the Court in Hirsch I. (Pernat Resp., Docket Entry 75.)

On February 7, 2013, the Court granted Hirsch's motion to file the Second Amended Complaint to the extent it asserted a

substantive due process claim against Pernat and a new John Doe. _Hirsch v. Desmond_, No. 08-CV-2660, 2013 WL 494614 (E.D.N.Y. Feb. 7, 2013) (hereinafter "_Hirsch III_").  The Court held that the claims asserted against Pernat and the John Doe state defendant were different from those already dismissed in _Hirsch I_.  While the claims against Pernat in _Hirsch I_ were more passive (blind reliance on Suffolk County's PSIR), the claims in the Second Amended Complaint were of active malfeasance.  "In the S[econd] A[mended] C[omplaint]," the Court explained, "Plaintiff now alleges that Defendant Pernat also required him to confess to a crime that she fabricated--_i.e._, a crime that was not included or otherwise mentioned in the PSIR." _Id._ at *4.  Moreover, the Court held that the Second Amended Complaint adequately pled a liberty interest in not being assigned a higher sex offender level than appropriate, and the allegations against the State Defendants were sufficiently arbitrary and outrageous to survive a motion to dismiss.  _Id._ at *5-6.  Finally, the Court refused to apply the doctrine of qualified immunity at that early pleading stage because "the unlawfulness of fabricating a crime and conditioning the completion of such treatment on confessing to such fabricated crime was 'apparent.'" _Id._ at *6.  Accordingly, Pernat was reinstated as a defendant and a second state-employee John Doe defendant was added. _Id._ at *8.

After some discovery, Hirsch identified the John Doe defendant named in the Second Amended Complaint as Tortora. As a consequence, on February 26, 2014, Hirsch again moved to amend the Complaint. (Pl.'s Mot. to File Third Am. Compl., Docket Entry 97.) The Third Amended Complaint both added Tortora and replaced the individual county defendants with Suffolk County itself. (Third Am. Compl., Docket Entry 117.) The Court granted Hirsch's motion. (Min. Order for May 16, 2014 Hr'g, Docket Entry 112.)

In August 2014, the County renewed its motion for summary judgment, arguing that Plaintiff was not subjected to a constitutional violation, that a municipal custom or policy did not proximately cause any constitutional violation suffered by Plaintiff, and that the claims against the County are barred by the statute of limitations. (County's Br., Docket Entry 114-3.) The State Defendants moved for summary judgment shortly thereafter, arguing that the claims against defendant Tortora are untimely, that Plaintiff was not subjected to a constitutional violation, that the State Defendants did not proximately cause any constitutional violation, and that the State Defendants are protected by the doctrine of qualified immunity. (State Defs.' Br., Docket Entry 115-11.) Plaintiff opposes both motions. (Pl.'s Consol. Opp. Br., Docket Entry 119.)

DISCUSSION

Before considering the merits of the pending motions, the Court will first discuss the applicable legal standards.

I.   Legal Standards

A.   Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10, 91 L. Ed. 2d 202, 211 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265, 273 (1986). "In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997).

"The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment." Id.; see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1611, 26 L. Ed. 2d 142, 162 (1970). A genuine factual issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S. Ct. at 2512, 91 L. Ed. 2d at 213-14. To defeat summary

judgment, "the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 256, 106 S. Ct. at 2514, 91 L. Ed. 2d at 217). "[M]ere speculation or conjecture as to the true nature of the facts" will not overcome a motion for summary judgment. Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986); see also Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986) ("Mere conclusory allegations or denials will not suffice." (citation omitted)).

B.    Motion to Revise a Prior Order

Rule 54(b) allows courts to revise "any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." FED. R. CIV. P. 54(b). Because the Court's interlocutory decisions are treated as law of the case, however, the Court's ability to revisit a prior ruling under Rule 54(b) is limited to circumstances where there is "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 167 (2d Cir. 2003) (quoting Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)). It is therefore not

enough "that [the movant] could now make a more persuasive argument." Fogel v. Chestnutt, 668 F.2d 100, 109 (2d Cir. 1981). "The law of the case will be disregarded only when the court has a clear conviction of error with respect to a point of law on which its previous decision was predicated." Id. (internal quotation marks omitted.).

## II.  Timeliness of Plaintiff's Claims

Both the County and Tortora argue that the claims against them are barred by the applicable statute of limitations.  Because the timeliness of an action is a threshold issue, Valdez ex rel. Donely v. United States, 518 F.3d 173, 181 (2d Cir. 2008), the Court visits those arguments first.

### A.  Claims Against the County

While the County contends that the claims against it should be dismissed because they are time-barred, Plaintiff's claims against the County are timely.

To be timely, a claim brought pursuant to 42 U.S.C. § 1983 for an action arising in New York must be brought within three years of accrual.  See Owens v. Okure, 488 U.S. 235, 251, 109 S. Ct. 573, 582, 102 L. Ed. 2d 594, 606 (1989) (stating that § 1983 claims are governed by the forum state's statute of limitations for personal injury actions); N.Y. C.P.L.R. § 214(5). While state law supplies the limitations period, federal law governs the date of accrual.  Eagleston v. Guido, 41 F.3d 865, 871

(2d Cir. 1994). A claim accrues at the time "plaintiff knows or has reason to know of the injury which is the basis of his action." Pinaud v. Cnty. of Suffolk, 52 F.3d 1139, 1156 (2d Cir. 1995) (citing Singleton v. City of New York, 632 F.2d 185, 191 (2d Cir. 1980)).

The County argues that Hirsch's claims accrued in 2002, when the unverified information was included in his PSIR. (County's Br. at 6-7.) This argument mischaracterizes the constitutional deprivations that Hirsch challenges. Hirsch alleges that his constitutional rights were violated (1) in 2006 when he was precluded from earning good time credit and (2) in 2007 when he was assigned a Level Two sex offender status. Accordingly, Plaintiff's claims could not have accrued before he suffered either of those alleged injuries. See Frith v. Hill, No. 07-CV-5899, 2009 WL 3073716, at *5 (S.D.N.Y. Sept. 23, 2009) cf. Polanco v. U.S. Drug Enforcement Admin., 158 F.3d 647, 654 (2d Cir. 1998) ("The district court assumed that the cause of action accrued when the currency was seized . . . [b]ut the specific constitutional violation alleged--the permanent deprivation of [plaintiff's] property without notice--did not occur until sometime later, when the property was forfeited."). That Hirsch alleges 2002 is when the County engaged in the action that caused the alleged 2006 and 2007 injuries is of no consequence. Rotella v. Wood, 528 U.S. 549, 555, 120 S. Ct. 1075, 1081, 145 L. Ed. 2d

1047, 1055 (2000) ("[I]n applying a discovery accrual rule, we have been at pains to explain that <u>discovery of the injury</u>, not discovery of the other elements of a claim, is what starts the clock." (emphasis added)).

Hirsch's claims against the County accrued in 2006 and 2007, and he filed this action in 2008. Accordingly, Hirsch's claims against the County are timely.

B. <u>Claims Against Tortora</u>

The State Defendants seek to similarly pin the accrual date of Hirsch's claims against Tortora in 2002, because "[t]he last (and only) act that Plaintiff alleges regarding defendant Tortora relates to Plaintiff's intake interview with defendant Tortora when Plaintiff entered DOCCS custody in 2002." (State Defs.' Br. at 7.) For the same reasons that the Court held that Plaintiff's claims against the County accrued in 2006 and 2007, Plaintiff's claims against Tortora accrued at those times as well.

In Tortora's case, however, the accrual dates of 2006 and 2007 remain problematic because Tortora was not named in this action until February 2013, when Hirsch filed his Second Amended Complaint.[7] Because February 2013 is outside the statute of

_____

[7] Tortora was not actually named as a defendant until February 2014, when Hirsch filed his Third Amended Complaint. While the Second Amended Complaint named Tortora as a "John Doe" defendant, "[i]t is familiar law that 'John Doe' pleadings cannot be used to circumvent statutes of limitations." <u>Aslanidis v. U.S. Lines, Inc.</u>, 7 F.3d 1067, 1075 (2d Cir. 1993).

limitations for Hirsch's claims, the claims against Tortora are not timely unless they relate back to the filing date of Hirsch's First Amended Complaint.  See FED. R. CIV. P. 15(c).

Rule 15(c)(1)(C) provides the federal standard for relation back.  For an amended complaint adding a new party to relate back under Rule 15(c)(1)(C), the following conditions must be met:

> (1) the claim must have arisen out of conduct set out in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in

---

Under federal law, a change from "John Doe" to the actual defendant constitutes a change of party, so a plaintiff's amended complaint will only relate back to the filing of the John Doe complaint where the requirements of Rule 15(c) are satisfied.  See id. at 1075; FED. R. CIV. P. 15(c).  However, "[Rule 15(c)(1)] does not apply to preclude any relation back that may be permitted under the applicable limitations law." FED. R. CIV. P. 15, Advisory Comm. Notes 1991.  The Second Circuit has interpreted this guidance from the Advisory Committee to apply New York State's "more forgiving principle of relation back in the John Doe context."  Hogan v. Fischer, 738 F.3d 509, 518 (2d Cir. 2013) (internal quotation marks omitted).  New York's rules allow the substitution of John Doe defendants nunc pro tunc, provided that the party (1) exercised diligence prior to the running of the statute of limitations, and (2) described the John Doe in such form as will fairly apprise the party that he is the intended defendant.  Id. at 518 (internal quotation marks omitted); see also N.Y. C.P.L.R. § 1024.  The Court finds that as between the Third Amended Complaint and the Second Amended Complaint, the requirements of C.P.L.R. § 1024 are satisfied.  Accordingly, Tortora's addition as a party relates back to the February 2013 filing of the Second Amended Complaint.  Because, however, the Second Amended Complaint was likewise filed beyond the expiration of the statute of limitations, the key inquiry (as discussed in text) is whether the allegations of the Second Amended Complaint relate back to the First Amended Complaint.

maintaining its defense; (3) that party should
have known that, <u>but for a mistake of
identity</u>, the original action would have been
brought against it; and . . . [4] the second
and third criteria are fulfilled within 120
days of the filing of the original complaint,
and . . . the original complaint [was] filed
within the limitations period.

<u>Hogan</u>, 738 F.3d at 517 (alterations and ellipses in original)

(quoting <u>Barrow v. Wethersfield Police Dep't</u>, 66 F.3d 466, 468-69

(2d Cir. 1995)).  Regarding the first condition, where the new

claims arise from conduct that is separate from yet related to the

conduct alleged in the earlier pleading, the new claims will not

relate back.  <u>See, e.g.</u>, <u>Ridge Seneca Plaza, LLC v. BP Prods. N.

Am. Inc.</u>, 545 F. App'x 44, 47 (2d Cir. 2013) (summary order)

(finding that claims concerning separate but related transactions

did not relate back where the original complaint included no

factual allegations concerning these transactions); <u>Am. Med. Ass'n

v. United Healthcare Corp.</u>, No. 00-CV-2800, 2006 WL 3833440, at

*12 (S.D.N.Y. Dec. 29, 2006); <u>Flum v. Dep't of Educ.</u>, No. 12-CV-

1123, 2015 WL 109935, at *3 (S.D.N.Y. Jan. 6, 2015).

    As the Court held in <u>Hirsch III</u>, the allegations in the

Second Amended Complaint are substantially different from those in

the First Amended Complaint.  2013 WL 494614, at *4.  The key--

indeed, the only--allegation against Tortora in the Second Amended

Complaint is that he fabricated the rape charge against Hirsch.

(Second Am. Compl. ¶ 6.)  The Court cannot find in Hirsch's First

Amended Complaint even the slightest suggestion of such impropriety. Instead, the claims against Tortora are based on "different conduct, in a different location, and attributable to [a] different [individual]" than those in the First Amended Complaint. ASARCO LLC v. Goodwin, 756 F.3d 191, 203 (2d Cir.) (refusing to hold that new claims relate back to the original filing date), cert. denied, 135 S. Ct. 715 (2014). While it may be true that Hirsch's claims against Tortora are grounded in the same legal theory as his earlier claims, "even where an amended complaint tracks the legal theory of the first complaint, claims that are based on an 'entirely distinct set' of factual allegations will not relate back." Slayton v. Am. Exp. Co., 460 F.3d 215, 228 (2d Cir. 2006) (citation omitted), as amended, (Oct. 3, 2006).

Accordingly, because the Court cannot say that the claims against Tortora arise out of the conduct set forth in the First Amended Complaint, the claims against Tortora are time-barred. Nonetheless, because the Court's conclusions regarding Hirsch's asserted constitutional deprivations are dispositive of the claims against Tortora, the Court will assume, arguendo, for the purpose of this Memorandum and Order, that Hirsch's claim against Tortora is timely.

III. Plaintiff's Constitutional Interests

A prerequisite to Plaintiff's recovery against either the County or the State Defendants is that Plaintiff must have

been deprived of a property or liberty interest protected by the Constitution.  See, e.g., Perry v. McDonald, 280 F.3d 159, 173 (2d Cir. 2001) ("In evaluating due process claims, the threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution." (internal quotation marks, citation, and alterations omitted)).  The Court proceeds to this inquiry.

Plaintiff alleges that his Fourteenth Amendment rights were violated by (1) being deprived of his right to earn good time credits and (2) being assigned a higher sex offender level than appropriate.  The Court discusses each alleged constitutional interest in turn.

A.    Good Time Credits

The Court previously held that Hirsch has no liberty interest in the good time credits that he was precluded from earning based upon his refusal to enter into the SOCP.  Hirsch I, 2010 WL 3937303, at *7.  Since the Court's decision, however, the Second Circuit has decided Graziano v. Pataki, 689 F.3d 110, 115 (2d Cir. 2012).  According to Hirsch, Graziano counsels this Court to revise its earlier holding to recognize that Hirsch has a limited liberty interest in not being deprived his good time credits for arbitrary or capricious reasons.  (See Pl.'s Br. to Revise, Docket Entry 106-1.)

In order for a prisoner to have an interest in good time credits that is protected by the Due Process Clause, "he must have a legitimate expectancy of release that is grounded in the state's statutory scheme." Barna v. Travis, 239 F.3d 169, 170 (2d Cir. 2001); Greenholtz v. Inmates of the Neb. Penal and Corr. Complex, 442 U.S. 1, 11-13, 99 S. Ct. 2100, 2106-07, 60 L. Ed. 2d 668, 678-79 (1979). Because the New York state statutory scheme makes the award of good time credits discretionary,[8] multiple courts have held that the good time credit system does not give rise to a legitimate expectancy of release, and prisoners therefore have no liberty interest in earning good time credits. See, e.g., Abed v. Armstrong, 209 F.3d 63, 67 (2d Cir. 2000); Edwards v. Goord, 362 F. App'x 195, 197 (2d Cir. 2010); Fifield v. Eaton, 669 F. Supp. 2d 294, 297 (W.D.N.Y. 2009); Mills v. Fischer, No. 11-CV-0896, 2013 WL 550731, at *7 (N.D.N.Y. Jan. 2, 2013), adopting report and recommendation, No. 11-CV-0896, 2013 WL 551091 (N.D.N.Y. Feb. 12, 2013); Spavone v. Fischer, No. 10-CV-9427, 2012 WL 360289, at *3 (S.D.N.Y. Feb. 3, 2012).

---

[8] See N.Y. CORRECT. LAW § 803 (outlining New York's discretionary good time program); N.Y. COMP. CODES R. & REGS. tit. 7, § 260.2 ("Good behavior allowances are in the nature of a privilege to be earned by the inmate and no inmate has the right to demand or to require that any good behavior allowance be granted to him.").

Similarly, the majority of courts in this Circuit that have addressed the issue have held, for the same reason, that a prisoner does not have a constitutional liberty interest in parole. See, e.g., Gordon v. Alexander, 592 F. Supp. 2d 644, 650 (S.D.N.Y. 2009); Scott v. Dennison, 739 F. Supp. 2d 342, 353 (W.D.N.Y. 2010); Gordon v. Lemons, 644 F. Supp. 2d 322, 329 (S.D.N.Y. 2009); see also Russo v. N.Y. State Bd. of Parole, 50 N.Y.2d 69, 73, 405 N.E.2d 225, 226-27, 427 N.Y.S.2d 982, 984 (1980) ("[B]ecause a person's rightful liberty interest is extinguished upon conviction, there is no inherent constitutional right to parole.").

In Graziano, the Second Circuit considered whether a class of New York State prisoners that had been convicted of violent felony offenses had been deprived of their constitutional right to due process by having their parole denied where the decision to deny parole was based solely on the violent nature of their crimes. 689 F.3d at 112-13. The Court stated, in no uncertain terms, "because the New York parole scheme is not one that creates a legitimate expectancy of release, '[prisoners] have no liberty interest in parole, and the protections of the Due Process Clause are inapplicable.'" Id. at 114 (alteration in original) (quoting Barna, 239 F.3d at 171). Notwithstanding that it denied the creation of any constitutional liberty interest in parole, the Court cited a district court case that suggested that

the Due Process Clause protects against arbitrary or capricious denials of parole.  See id. at 115 (citing Boddie v. N.Y. State Div. of Parole, 285 F. Supp. 2d 421, 428 (S.D.N.Y. 2003).[9]  The Court then proceeded to explain why the challenged policy was neither arbitrary nor capricious.  Id. at 115-16.  Contrary to Hirsch's assertion, the Graziano Court did not create a limited liberty interest in parole; it discussed how the plaintiffs' cause would fail even if there was one.  Id.

The Court does not read Graziano's "arbitrary and capricious" discussion to hold that the Due Process Clause protects against the arbitrary or capricious denials of parole for at least three reasons.  First, the Court unequivocally stated that prisoners lacked any constitutionally liberty interest in parole, id., and absent a valid liberty interest, the Due Process Clause's protection against arbitrary state action does not apply.  Indeed,

_____

[9] The Court is aware of a number of other pre-Graziano cases that have held in line with Boddie.  See Brown v. Thomas, No. 02-CV-9257, 2003 WL 941940, at *1 (S.D.N.Y. Mar. 10, 2003) ("Thus, petitioner's federally-protected liberty interest is limited to not being denied parole for arbitrary or impermissible reasons."); Manley v. Thomas, 255 F. Supp. 2d 263, 266 (S.D.N.Y. 2003).  In the Court's view, however, Graziano reaffirmed the absence of any liberty interest in parole.  Moreover, it is improper to apply the Due Process Clause's protections absent a constitutional liberty interest.  Clubside, Inc. v. Valentin, 468 F.3d 144, 157 (2d Cir. 2006).  Accordingly, insofar as these cases may be interpreted to undertake the Fourteenth Amendment's arbitrary and capricious analysis even absent a constitutionally protected liberty interest, the Court disagrees with such an undertaking.

it is axiomatic that the Due Process Clause does not protect against all arbitrary state action; some constitutional interest must be implicated.[10]   See, e.g., Clubside, 468 F.3d at 157; Patterson v. Coughlin, 761 F.2d 886, 890 (2d Cir. 1985) ("Recovery under 42 U.S.C. § 1983 (1982) is premised upon a showing, first, that the defendant has denied the plaintiff a constitutional or federal statutory right and, second, that such denial was effected under color of state law." (emphasis added)); Adickes, 398 U.S. at 150, 90 S. Ct. at 1604, 26 L. Ed. 2d at 150 ("[T]he plaintiff must prove that the defendant has deprived him of a right secured by the 'Constitution and laws' of the United States."); Olim v. Wakinekona, 461 U.S. 238, 250, 103 S. Ct. 1741, 1748, 75 L. Ed. 2d 813, 823 (1983) ("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to

_____

[10] Most availing to Hirsch's case is the Second Circuit's interpretation, in Graziano, of its earlier holding in Rodriguez v. Greenfield, 7 F. App'x 42 (2d Cir. 2001). The Graziano Court explained that Rodriguez "suggest[ed], but [did] not decid[e], that a parole system may become constitutionally offensive if administered maliciously or in bad faith." 689 F.3d at 115 n.2. The Court's reading of Graziano is consistent with this suggestion. The Court does not doubt that certain abuses of the parole system (or the good time credit system, for that matter) may run afoul of other constitutional rights, such as the right to Equal Protection of the Laws. Indeed, it seems that the malicious application of the parole scheme to one prisoner would fail the rational basis test underlying a class-of-one equal protection claim. See Analytical Diagnostic Labs, Inc. v. Kusel, 626 F.3d 135, 140 (2d Cir. 2010). However, absent a valid liberty interest in parole, the protections of the Due Process Clause are inapplicable. Graziano, 689 F.3d at 114.

which the individual has a legitimate claim of entitlement."). Second, the Graziano Court recognized the inapplicability of the United States Constitution by asserting that even if the New York State parole system was being applied in an unlawful manner, the appropriate remedy lied in state court. Graziano, 689 F.3d at 116 ("[E]ven if New York State implemented an official policy denying parole to all violent offenders . . . . Plaintiffs may be able to state a valid claim in New York State courts under New York State law, [but] Plaintiffs have failed to state a claim under the Due Process Clause.") Third, the Court sternly warned against constitutionalizing state law by finding the United States Constitution applicable to all violations of state law. Id. at 116-17. The Court cannot read Graziano to create from thin air a constitutionally protected liberty interest and then, in the same breath, warn against such a lack of "judicial self-restraint." Id. at 116-17 (quoting Collins v. City of Harker Heights, Tex., 503 U.S. 115, 125, 112 S. Ct. 1061, 1068, 117 L. Ed. 2d 261, 273 (1992)).

Moreover, even if the Court in Graziano held that the New York State parole scheme grants to prisoners some limited constitutional interest, the regulations governing the parole scheme say nothing about the regulations governing the award of good time credits. Though the effect of good time credits is the same as parole in that both provide for the early release from

incarceration, a constitutional right to one does not beget a constitutional right to the other. As discussed above, the key inquiry is whether the state law creates a "legitimate expectancy of release." Greenholtz, 442 U.S. at 11-13, 99 S. Ct. at 2106-07, 60 L. Ed. 2d at 678-79 (citation omitted). The New York State law related to good time credits is far more discretionary than that related to parole. Compare N.Y. CORRECT. LAW § 803 (governing good time credits) with N.Y. EXEC. LAW § 259-i (governing parole). For instance, the parole scheme enumerates a list of factors that the parole board must consider, prompting courts to recognize that the discretion awarded to the parole board is "not unlimited." See N.Y. EXEC. LAW § 259-i; Rodriguez, 7 F. App'x at 44. The regulations regarding good time credit contain no such list of required considerations. Accordingly, it is possible, indeed likely, that any legitimate expectancy that the parole system creates in prisoners is not also created by the good time credit system.

In sum, because the Court does not read Graziano as establishing that a New York State prisoner has any constitutional interest in parole, and because it is unlikely, in any event, that such a holding would apply to the more discretionary provisions of New York Corrections Law related to good time credits, the Court finds that its earlier holding that Hirsch has no liberty interest in good time credits should remain undisturbed.

B.  Sex Offender Level

The Court previously held that Hirsch has a right to not be assigned a higher level sex offender status than appropriate. Hirsch I, 2010 WL 3937303, at *7; Hirsch III, 2013 WL 494614, at *5.  As a result, the Court refused to dismiss Hirsch's claims because he had alleged that the Defendants' violated his constitutional right by improperly increasing his RAI score by fifteen points, pushing him over the threshold between a Level One offender and a Level Two offender.  Hirsch I, 2010 WL 3937303, at *7; Hirsch III, 2013 WL 494614, at *5.  The relevant allegations in Hirsch's most recent complaint are as follows:

> In addition, because Hirsch was precluded from participating in the SOP, the New York State Board of Examiners of Sex Offenders added fifteen points to Hirsch's risk score for his 'refusal to accept responsibility and his expulsion from treatment.
>
> . . . .
>
> Taking into account the fifteen points removed by Justice Kahn, Hirsch would not have been classified as a level two sex offender had he not been also assessed fifteen points because he had purportedly "Not accepted responsibility / refused or expelled from treatment."  Without those fifteen points, Hirsch would be classified as a level one sex offender--a level which does not require that Hirsch be prominently displayed on a publicly available website maintained by DCJS.  With those improper fifteen points, Hirsch was classified as a level two sex offender--a level which required him to register with and be displayed on a publicly available website maintained by DCJS.

31

(Third Am. Compl. ¶¶ 20-23.) Though these allegations were sufficient to withstand the Court's initial scrutiny, at this summary judgment stage, the Court looks beyond the face of the pleadings. Weinstock, 224 F.3d at 41 ("[U]nsupported allegations do not create a material issue of fact.").

While Hirsch has stated a valid liberty interest, review of Hirsch's RAI makes clear that he suffered no deprivation of this interest. Hirsch's RAI definitively establishes that the Board considered Hirsch eligible for an increase to his score based on his refusal to accept responsibility on two independent grounds. First, Hirsch refused to participate in the SOCP. Second, by letter from his attorney to the Board, Hirsch maintained his innocence despite his having been convicted by a jury. (Logue Decl. Ex. 12.) Because he qualified for additional points under the rubric's two alternative criteria--ten points for refusal to accept responsibility or fifteen points for refusal to enter into a treatment program--Hirsch was given fifteen points. (Logue Decl. Ex. 12.) While the Board may have improperly awarded fifteen points based upon Hirsch's refusal to enter the SOCP, the Board had independent grounds to award ten points based upon Hirsch's letter. Accordingly, assuming that the Board improperly considered Hirsch's refusal to participate in the SOCP, the effect was a five-point increase to Hirsch's score, not a fifteen-point increase.

In short, because Hirsch sent a letter to the Board that qualified him for ten added points resulting from his refusal to accept responsibility <u>independent of Hirsch's non-participation in the SOCP</u>, Hirsch was improperly assigned, at most, five points.

Subtracting the five points that the Court assumes Hirsch was improperly awarded results in Hirsch's receiving a score of seventy five. Because a score between seventy five and one hundred ten results in the Board recommending an offender Level Two, Hirsch's offender level does not change. To state it differently, had the Board never considered Hirsch's refusal to enter the SOCP, Hirsch still would have earned a Level Two offender designation. While Hirsch has a liberty interest in not being assigned a higher sex offender level than appropriate, the facts establish that Hirsch was assigned the appropriate sex offender level, and he therefore suffered no deprivation of this liberty interest.

In sum, because the Court finds that Hirsch was not deprived of a constitutional or statutory liberty interest, the protections of the Due Process Clause are inapplicable. <u>See,</u> <u>e.g.</u>, <u>Patterson</u>, 761 F.2d at 890. Accordingly, Hirsch's due process claims fail.

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's motion requesting the Court revise its earlier ruling that he had no liberty interest

in his good time credits (Docket Entry 106) is DENIED, and the County's and the State Defendants' motions for summary judgment (Docket Entries 114, 115) are GRANTED.  As discussed in footnote one, the Clerk of the Court is DIRECTED to update the caption to add Suffolk County as a defendant and to TERMINATE all defendants EXCEPT Suffolk County, Katherine Pernat, and Joseph Tortora. Additionally, as discussed in footnote three, the County is directed to refile a corrected Rule 56.1 Statement with complete deposition transcripts.  Upon receipt of the complete deposition transcripts, the Clerk of the Court is directed to enter judgment consistent with this Memorandum and Order and to mark this case CLOSED.

                         SO ORDERED.

                         /s/ JOANNA SEYBERT
                         Joanna Seybert, U.S.D.J.


Dated:     March   18  , 2015
           Central Islip, New York